

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 29, 2022

**By ECF and Email**

The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

The Honorable Sarah L. Cave
United States Magistrate Court Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *United States v. Min Chen, et al.,* No. S1 22 Cr. 125 (AT)

Dear Judge Torres and Judge Cave:

In advance of the presentments in the above-captioned case, the Government respectfully submits this letter to provide the Court and defense counsel with a summary of the evidence and its position with respect to pretrial detention. The defendants are both a danger to the community and a flight risk and should thus be detained.

On March 16, 2022, a grand jury returned a superseding indictment charging the defendants with conspiracy to distribute and possess with intent to distribute controlled substances, including crystal methamphetamine, MDMA, ketamine, and marijuana, in violation of 18 U.SC. §§ 841(b)(1)(A), 841(b)(1)(C), 841(b)(1)(D), 841(b)(1)(E), and 846. Min Chen, Huai Weng, Weifa Zhang, and Xianggan He were arrested today. Min Chen and Weifa Zhang were arrested in the Eastern District of New York, Huai Weng was arrested in the Western District of Texas, and Xianggan He was arrested in the Central District of California. Law enforcement continues to search for Jiading Li in the Western District of Washington. Jiading Li and Huai Weng previously resided in New York while engaging in the offense conduct. Huai Weng and Xianggan He will be initially presented in the districts of their arrest, and the Government will share this letter with the presiding judges in those districts in order to determine whether the defendants will be detained or granted bail.

Where, as here, a defendant is charged with a controlled substance offense with a maximum term of imprisonment that is greater than ten years, there is a mandatory presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as

required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A).  The defendants in this case cannot overcome this presumption in favor of detention. Furthermore, the (i) nature and circumstances of the offense charged; (ii) weight of the evidence against each defendant; (iii) history and characteristics of each defendant; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the defendants' release weigh in favor of detention in this case. See 18 U.S.C. § 3142(g). For the reasons set forth below, and consistent with the factors set forth in 18 U.S.C. §§ 3142(e)(3)(A) and (g), each of the defendants should be detained to protect the community and prevent their flight from prosecution.

## I.      The Offense Conduct

The charge in this case stems from an investigation into a New York-based drug trafficking organization (the "DTO") that distributes kilogram-quantities of crystal methamphetamine by mail from New York to Australia and New Zealand.  The DTO also distributes MDMA, ketamine, and marijuana, including in the New York metropolitan area.  The DTO received narcotics in New York by mail, including crystal methamphetamine from California, MDMA from the Netherlands and France, and Ketamine from the United Kingdom, France, and Germany.  Min Chen, Huai Weng, Jiading Li, and Weifa Zhang are members of this drug trafficking organization, and Xianggan He, based in California, supplied the DTO with crystal methamphetamine by mailing the narcotics to New York, and Xianggan He has received MDMA by mail from Europe.  The DTO's narcotics trafficking activities began as early as October 2018 and continued until at least early 2022.

Law enforcement has seized approximately 64 packages containing narcotics that law enforcement has attributed to the DTO or Xianggan He, and during the investigation, law enforcement has seized approximately 55 kilograms of crystal methamphetamine, 27 kilograms of ketamine, seven kilograms of MDMA, and 50 pounds of marijuana.  Law enforcement has tied these packages containing narcotics to the defendants based on a combination of: (1) addresses on the packages associated with the defendants, such as the defendants' residences; (2) phone numbers used by the defendants either listed on the shipping information or used to electronically track the shipping status of the packages; (3) Internet Protocol (IP) Addresses that are subscribed to the defendants' residences and were used to track the shipping status of the packages; (4) video surveillance of the defendants mailing the packages; (5) physical surveillance of the defendants mailing the packages; and (6) fingerprint evidence, among other evidence.  Overlapping links tying various members of the DTO and Xianggan He to the same packages show that the members of the crew are conspiring together to distribute narcotics.  Law enforcement has observed Min Chen, Jiading Li, and Weifa Zhang engaged in what appeared to be retail hand-to-hand drug transactions in New York City.  Moreover, evidence recovered from cellphones used by Min Chen, Huai Weng, and Jiading Li show that the defendants communicated with each other and engaged in narcotics trafficking.

## II.     The Defendants

Each of the defendants has played a key role in the DTO's international and national distribution of controlled substances, including kilogram-quantities of crystal methamphetamine, MDMA, ketamine, and marijuana.  As a result, each of the defendants is facing a mandatory

minimum sentence of ten years' imprisonment if convicted and a lengthy sentence under the U.S. Sentencing Guidelines.

### A. Min Chen

Min Chen is the apparent leader of the DTO.  Numerous packages of narcotics seized during the investigation were tracked by IP addresses that law enforcement determined based on information provided by internet service providers to be IP addresses for Min Chen's residences. This includes numerous packages shipped to Australia and New Zealand from New York, each containing one to two kilograms of crystal methamphetamine.  It also includes packages mailed to New York City from Europe containing kilogram quantities of MDMA, packages containing marijuana and over two kilograms of crystal methamphetamine sent to New York City from California, and packages sent from New York City to other locations in the U.S. containing crystal methamphetamine.  In other instances, seized narcotics packages were tracked using one of Min Chen's known phone numbers or the recipient shipping information listed Min Chen's known phone numbers.  A number of these narcotics packages sent to New York City tracked by Min Chen or that listed his phone number on the shipping label were addressed to the residences of Min Chen's co-conspirators, Huai Weng, Jiading Li, and Weifa Zhang.

On February 8, 2021, Min Chen was arrested by NYPD for an unrelated assault at his residence.  When NYPD officers attempted to arrest Min Chen pursuant to the arrest warrant, Min Chen fled his residence from a back exit, and Min Chen was ultimately arrested approximately half a block from his residence.  Law enforcement seized one cellphone from Min Chen's person incident to arrest, and two of Min Chen's cellphones from the residence, pursuant to Min Chen wife's signed consent in Chinese to search the residence.  The Government obtained search warrants for the phones, and substantial evidence was recovered from the cellphones, including: (1) numerous photographs and videos of crystal meth, ketamine, and marijuana, as well as photos of large amounts of cash and shipping boxes; (2) web history showing Min Chen tracked packages that were seized by law enforcement and contained narcotics; (3) chats with customers, in code, ordering drugs from Min Chen for delivery around New York City; (4) communications between Min Chen and Weifa Zhang in which they discuss narcotics and deliveries and exchange photographs of narcotics and shipping labels; and (5) discussions with other co-conspirators regarding narcotics, including sending narcotics to Australia and packages containing narcotics seized by law enforcement.  As described further below, evidence recovered from Huai Weng's cellphones include communications between Huai Weng and Min Chen regarding narcotics.

Min Chen has continued to engage in the offense conduct in recent months.  Between approximately July and September 2021, the Min Chen's IP address at his current residence was used to track approximately sixteen packages mailed from New York City to Australia that were seized by law enforcement, and each contained at least one kilogram of crystal methamphetamine. In late January 2022, law enforcement agents observed Min Chen collect what appeared to be narcotics proceeds from various individuals in Queens, and then bring those suspected proceeds into his home.  During a search executed pursuant to a warrant today, agents recovered $75,000 in U.S. currency from Min Chen's home.

Based on the foregoing, Min Chen poses a substantial danger to both the local and international community and should thus be detained. Min Chen runs a large-scale, sophisticated narcotics trafficking operation with national and international reach that distributes various types of narcotics, including large quantities of crystal methamphetamine. Crystal methamphetamine is a highly addictive, dangerous drug with serious side effects that has resulted in an increasing number of overdose deaths in the United States in recent years. Detention is necessary to prevent Min Chen from further endangering the community because Min Chen can continue to engage in narcotics trafficking from his home using his cellphone. To date, the evidence indicates that Min Chen works with other co-conspirators to receive and mail packages of narcotics and distribute narcotics in hand-to-hand transactions in New York City and that he coordinates that activity using his cellphones. Min Chen can continue to coordinate that narcotics trafficking activity using his cellphone if he is not detained. Even if released with a condition that Pretrial Services monitor his electronic devices, given that Min Chen's communications regarding drug trafficking are in Chinese, detecting any continued drug trafficking conduct would be challenging as Pretrial Services does not have any Chinese-speakers. In addition, in 2015, Min Chen was arrested in New York, charged with several narcotics felonies, and later pled guilty to a narcotics misdemeanor offense. The fact that Min Chen has continued to engage in narcotics trafficking since his conviction weighs in favor of detention.

Min Chen also poses a substantial risk of flight. At the time of his arrest in February 2021, he sought to escape law enforcement by fleeing from the back of his house and was ultimately detained after a chase half a block from his residence. Although a U.S. permanent resident, Min Chen was born in China, retains Chinese citizenship, and on occasion travels internationally, including most recently to South Korea in July 2021. If Min Chen returns to China, he cannot be extradited to the United States. Min Chen has a significant incentive to flee given he is facing a ten-year mandatory minimum sentence and a Guidelines sentence of 292 – 365 months. Evidence, moreover, indicates Min Chen has the means to flee—a kilogram of crystal meth sells for approximately $150,000, many multiple the price in New York or California, and agents recovered $75,000 in U.S. currency at Min Chen's residence while executing a search warrant today. Lastly, as described above, the weight of the evidence is strong, providing Min Chen with further incentive to flee.

## B. Huai Weng

Huai Weng worked closely with Min Chen to operate the DTO. Law enforcement has tied multiple seized packages containing narcotics to Huai Weng, including packages mailed from New York to Australia, each containing at least one kilogram of crystal meth, and packages containing at least a kilogram of MDMA mailed from Europe to New York. For example, multiple packages were mailed to Huai Weng's known residence, while other packages were either tracked by Huai Weng's known phone number or called the post office to check on the status of a package. A number of these packages were tracked by Min Chen's IP address. Law enforcement has also identified Huai Weng in surveillance video mailing a package in Brooklyn destined for Australia that was seized by law enforcement and found to contain approximately one kilogram of crystal meth—this package, too, was tracked by Min Chen's IP address.

In July 2021, Huai Weng was arrested in Brooklyn with approximately 50 pounds of marijuana, and law enforcement seized his cellphones incident to arrest.  Huai Weng consented to a search of his cellphones.  Substantial evidence was recovered from Huai Weng's cellphones, including: (1) photos and videos of crystal meth, marijuana, large amounts of cash, shipping tracking information, and vacuum sealed bags of crystal meth next to USPS boxes; (2) email communications showing payments between Huai Weng and Jiading Li; (3) communications between Huai Weng and Jiading Li regarding narcotics deliveries and prices; (4) communications between Huai Weng and Min Chen discussing delivering money, purchasing narcotics packing material, and shipping tracking numbers, as well exchanging screenshots of a text exchange with Jiading Li regarding drugs and money; and (5) a WhatsApp conversation between Min Chen and Huai Weng in which Min Chen said he had "fast delivery" and passed Xianggan He's phone number.  Evidence recovered from Huai Weng's cellphones shows Huai Weng participated in the DTO's narcotics activity from as early November 2018 up until the time of his arrest in July 2021.

Based on the foregoing, Huai Weng is a significant participant in the DTO's narcotics trafficking.  Although he has essentially no criminal history, he poses a serious danger to the local and international community given that he has for several years distributed large quantities of narcotics in the United States and abroad, including kilogram-quantities of crystal meth, a dangerous, highly addictive drug.  Like Min Chen, if he is not detained, Huai Weng can continue to coordinate the narcotics trafficking activity using a cellphone by working with others to send and receive narcotics packages domestically and internationally, as he has done to date.

Huai Weng also poses a substantial risk of flight given his foreign ties, the weight of the evidence, and the potential lengthy sentence.  Huai Weng is a U.S. permanent resident, but he was born in China and remains a citizen of China, which does not extradite to the U.S.  Although Huai Weng has not traveled abroad in the last three years, he has previously made multiple international trips.  Huai Weng has a significant incentive to flee given he is facing a ten-year mandatory minimum sentence and a Guidelines sentence of 292 – 365 months.  Moreover, as outlined above, the weight of the evidence is strong, providing Huai Weng with further incentive to flee.

## C.  Jiading Li

Like Huai Weng, Jiading Li was an important participant in the DTO.  Law enforcement has tied multiple seized packages containing narcotics to Jiading Li, including packages mailed from New York to Australia and New Zealand containing kilo-quantities of crystal meth, a package of over two kilograms of crystal meth mailed from California to New York, and packages mailed from Europe to New York containing kilo-quantities of MDMA.  For example, in June 2019, law enforcement seized a package mailed by Xianggan He in California to Jiading Li's residence in Brooklyn that contained over two kilograms of crystal meth.  This package was tracked by Min Chen's IP address, and Jiading Li called the post office to check on the status of the package using his known phone number.  Also in June 2019, law enforcement seized a package containing approximately one kilogram of crystal meth mailed from Brooklyn to Australia that included Jiading Li's phone number in the sender information.  In the fall of 2019, law enforcement seized two packages, each containing over one kilogram of MDMA, mailed from Europe to Brooklyn that included Jiading Li's phone number in the recipient information; both packages were mailed to Huai Weng's address and tracked by Min Chen's IP address.

Law enforcement, while conducting surveillance, has observed Jiading Li mail packages found to contain narcotics.  In July and October 2019, law enforcement agents surveilling Jiading Li observed Jiading Li mail two envelopes at post offices in Manhattan and Brooklyn, respectively, to upstate New York, that were then seized by law enforcement, searched pursuant to warrants, and found to each contain approximately 30 grams of crystal meth.  On other occasions in 2019 while conducting surveillance of Jiading Li, law enforcement observed Jiading Li engage in what appeared to be hand-to-hand retail drug transactions by driving around New York City and having brief encounters with various individuals in which he handed they something small.  In March 2020, law enforcement again Jiading Li drive around New York City, making brief stops and handing small objects to various individuals who approached his car; at one of the stops, law enforcement observed the individual stuff two small, clear Ziplock bags of what appeared to be a crystalline substance in his sock.

Cellphone evidence further demonstrates Jiading Li's participation in the DTO.  In January 2020, U.S. Customs and Border Protection conducted a manual review of Jiading Li's cellphone pursuant to the border search authority.  CBP found numerous package tracking numbers, including for packages destined for Australia and New Zealand, consistent with the DTO's narcotics trafficking activity.  One of the package tracking numbers was for a package mailed in November 2018 from Brooklyn to New Zealand seized by law enforcement and found to contain approximately one kilogram of crystal meth.  In addition, Min Chen's phone numbers were saved in Jiading Li's phone.  Moreover, as described above, evidence recovered from Huai Weng's cellphones include: (1) communications between Huai Weng and Min Chen in which they exchanged screenshots of communications with Jiading Li that discussed drugs and money; (2) email communications between Huai Weng and Jiading Li spanning from 2018 to 2021; and (3) a note listing Jiading Li's address, which was the address to which seized packages containing narcotics had been sent.

Jiading Li is thus another significant participant in the DTO's drug trafficking, and Jiading Li's substantial participation in the DTO's domestic and international trafficking activities weighs in favor of detention.  Particularly by engaging in the domestic and international distribution of large quantities of crystal meth, Jiading Li has shown that he is a serious danger to the community.

Jiading Li poses a considerable risk of flight given his foreign ties, the potential length sentence, and the weight of the evidence.  Although a naturalized U.S. citizen, Jiading Li was born in China and presumably retains Chinese citizenship.  Jiading Li appears to maintain ties abroad, traveling abroad frequently, including two trips to China and one trip to South Korea in the last three years.  Jiading Li has a significant incentive to flee given he is facing a ten-year mandatory minimum sentence and a Guidelines sentence of 292 – 365 months.  Moreover, as outlined above, the weight of the evidence is strong, providing Jiading Li with further incentive to flee.

## D.  Weifa Zhang

Weifa Zhang was a significant member of the DTO.  Weifa Zhang both sent and received narcotics packages in furtherance of the DTO and engaged in retail narcotics transactions in New York City.  As in the case of Weifa Zhang's co-conspirators, law enforcement has connected

multiple seized narcotics packages to Weifa Zhang.  For example, in December 2020, law enforcement seized two packages that each contained more than approximately four kilograms of MDMA mailed from Europe to New York City addresses identified as residences of Weifa Zhang; one of the two packages listed Min Chen's phone number as the recipient phone number.  In March 2021, law enforcement seized another package sent from Europe to Weifa Zhang's residence that contained over seven kilograms of ketamine.

Law enforcement has also observed Weifa Zhang mail packages containing narcotics.  In February 2021, while conduct physical surveillance, agents observed Weifa Zhang mail three envelopes from Queens that were then seized by law enforcement and searched pursuant to a warrant.   Collectively,  the  envelopes  contained  approximately  60  grams  of  crystal methamphetamine  and  approximately  64  grams  of  benzodiazepine  pills.   Two  of  the  three envelopes were tracked using Min Chen's IP address.  Like in the case of Jiading Li, agents have observed Weifa Zhang drive around New York City, making brief stops to meet various individuals and hand them small objects, consistent with retail drug transactions.  On one occasion in February 2021, agents observed Weifa Zhang hand a small object through his car window to an individual, who placed the object in his pocket, and when agents stopped the individual immediately after the encounter, the individual pulled out a Ziplock bag of crystal meth from his pocket.  Today, agents recovered incident to arrest a small quantity of ketamine from Weifa Zhang.

Cellphone evidence further demonstrates Weifa Zhang's participation in the DTO and his close coordination with Min Chen. As described above, evidence recovered from Min Chen's cellphones includes communications between Min Chen and Weifa Zhang discussing drugs, pricing, money owed, and deliveries, and they exchanged photos of crystal meth, ketamine, packages,  and  shipping  labels,  including  labels  with  Weifa  Zhang's  address.   These communications span from approximately April 2020 to February 2021, when Min Chen's cellphones were seized, showing Weifa Zhang's lengthy involvement in the DTO's drug trafficking.

As described above, Weifa Zhang is a key player in the DTO's operation who both sent and received narcotics packages and delivered narcotics in New York City, including crystal meth and kilogram-quantities of MDMA and ketamine.  Evidence shows his participation in the DTO is prolonged and that he works closely with Min Chen.  Although Weifa Zhang has no prior criminal history, given Weifa Zhang's role within the DTO, his lengthy involvement with the DTO, and his apparent close working relationship with Min Chen, there is significant cause for concern that, if Weifa Zhang is not detained, the DTO's operations will continue, resulting in a serious danger to the community.

Like his co-defendants, Weifa Zhang poses a serious risk of flight due to his foreign ties, the weight of the evidence, and the substantial sentence Weifa Zhang faces if convicted. Weifa Zhang, although a permanent resident, was born in China and is a citizen of China, which does not extradite to the U.S.  Although Weifa Zhang has not travelled abroad within the last three years, he has multiple prior international trips.  Weifa Zhang has a strong incentive to flee given the serious penalties he is facing if convicted, including a ten-year mandatory minimum term of imprisonment and a Guidelines sentence of 292 – 365 months.  Moreover, as described above, the weight of the evidence is strong, including explicit communications with Min Chen regarding drug

trafficking, and multiple package seizures of kilogram-quantities of narcotics tied specifically to Weifa Zhang.

### E.  Xianggan He

Xianggan He, based in California, was a prominent narcotics supplier for the DTO in New York.   As described above, in June 2019, law enforcement seized a package containing approximately two and a half kilograms of crystal meth sent from California by Xianggan He to Jiading Li's residence and tracked using Min Chen's IP address.  Video surveillance from the post office in California shows Xianggan He mailed this package, and fingerprints recovered from the drug packaging are Xianggan He's fingerprints.  In March 2020, law enforcement also seized a package mailed from Europe containing approximately one kilogram of MDMA and mailed to an address associated with Xianggan He.

Evidence shows Xianggan He had a sustained relationship with the DTO.  For example, toll records show numerous communications between Xianggan He and Min Chen.  Between June 2019 and December 2020, Xianggan He had over 2,000 contacts with two phone numbers used by Min Chen.  As described above, communications from Huai Weng's cellphones show Min Chen gave Xianggan He's phone number (the same phone number Xianggan He used to communicate with Min Chen's two phone numbers) to Huai Weng stating, in substance, that Xianggan He had "fast delivery"—meaning fast delivery of narcotics.  Postal records show Xianggan He mailed many packages to the DTO in New York in 2019; although these packages were not intercepted, they are consistent with the DTO's drug trafficking activity.  These packages were mailed from Xianggan He's known addresses to Jiading Li's address (the same address that was supposed to receive the two and a half kilos of crystal meth from Xianggan He) and to Min Chen's residences, and the packages were tracked using Min Chen's IP address.  Xianggan He has remained in contact with the DTO.  Based on travel records, cellphone location information, and physical surveillance, law enforcement has learned that Xianggan He travelled to New York last week and visited Min Chen at his residence.

Based on the foregoing, Xianggan He is a significant supplier of kilogram quantities of crystal meth and MDMA and is thus a danger to the community.  Although Xianggan He does not have a criminal history, his involvement in narcotics trafficking is significant with respect to both the amount of narcotics, geographic reach, and length of time.  The fact that Xianggan He receives kilogram-quantities of narcotics from abroad and distributes kilogram-quantities of narcotics from California to New York demonstrates that Xianggan He is a sophisticated narcotics trafficker. There is thus significant cause for concern that Xianggan He will continue distributing harmful narcotics if not detained.

Like his co-defendants, Xianggan He is a serious flight risk on the basis of his substantial foreign ties, the weight of the evidence, and the lengthy term of imprisonment he faces if convicted. Xianggan He, although a permanent resident, was born in China and is a citizen of China, which does not extradite to the U.S.  Moreover, Xianggan He only immigrated to the U.S. a few years ago, in 2018, suggesting his ties to China remain significant.  In the last three years, Xianggan He has made two trips to China, and he has previously made multiple international trips.  Xianggan

He has a strong incentive to flee given the serious penalties he is facing if convicted, including a ten year mandatory minimum term of imprisonment, and a Guidelines sentence of 292 – 365 months, based on the total drug weight attributed to the conspiracy.  Moreover, as described above, the weight of the evidence is strong, including fingerprint evidence and video showing Xianggan He mailed a package containing over two and a half kilograms of crystal meth from California to the DTO in New York.

## III.      Conclusion

In light of the defendants' substantial, lengthy, and far-reaching narcotics trafficking operation, each of the defendants pose a significant risk of danger to both the local and international community.  Moreover, for the reasons set forth above, each of the defendants pose a significant risk of flight given their ties to China, the lengthy sentences they are each facing if convicted, and the overwhelming evidence of their involvement in distributing kilogram quantities of crystal methamphetamine, MDMA, ketamine, and marijuana locally and abroad.  Accordingly, the Government respectfully requests that the defendants be detained.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____
Cecilia E. Vogel
Thomas Wright
Assistant United States Attorneys
(212) 637-1084

cc:      All counsel of record (via ECF and email)